FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ OCT 07 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALAN BERKUN,

        Petitioner,

- against -

WARDEN DUKE TERRELL,

        Respondent.
------------------------------------------------------------x

Memorandum and Order

11 Civ. 3237 (ILG)

GLASSER, Senior United States District Judge:

Pro se petitioner Alan Berkun ("Berkun"), who is currently incarcerated at the Metropolitan Detention Center in Brooklyn (the "MDC") awaiting sentencing before the Court, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he seeks to void a November 1, 2010 disciplinary ruling and expunge the matter from his Presentence Report. Petition dated June 28, 2011 ("Pet.") at 2-3. For the following reasons, Berkun's petition is hereby DENIED.

## BACKGROUND

On October 18, 2010, the staff at MDC learned that Berkun used the MDC phone system to arrange a stock fund transaction in violation of prison regulations prohibiting prisoners from conducting business over MDC phones. Pet. Ex. 1 (Incident Report). Later that day, Berkun received an Incident Report charging him with violating Bureau of Prisons ("BOP") Code Section 397 (use of the telephone for abuses other than criminal activity) and Section 408 (conducting a business). Pet. Ex. 3, at 1. According to the

Incident Report, Berkun called someone named Gary and said "'[b]orrow 2,000 GOE and short at the market. But make sure enough SMA and if you can [sic] if you do it and throw me a early email and let me know what my SMA is.' SMA stands for simple moving average, which is a stock trading acronym. Inmates are prohibited from conducting business." Pet. Ex. 1.

On October 25, 2010, the BOP requested an extension of time from the MDC's Warden, Duke Terrell (the "Warden"), to hold a Unit Disciplinary Committee ("UDC") hearing on the charge, and the Warden granted the request. Pet. Ex. 2, at 3. The hearing was held on November 1, 2010 and, finding the violations of Sections 408 and 397 to be substantiated, the UDC imposed a sanction of loss of phone privileges and email access for 15 days. Pet. Ex. 3, at 1. Berkun appealed the decision and, after an eventual review by the Regional Director of the BOP (the "Director"), who granted Berkun's appeal in part and remanded the proceedings back to the UDC, the UDC expunged the violation of Section 408 and removed the sanction of loss of 15 days of his phone privileges. Pet. Ex. 5, at 1-2.

Contending that both charges should have been expunged, Berkun again appealed the decision to the Director who rejected the appeal, concluding that "there was enough evidence to support the Code 397 [sic]. Inmates are not authorized to conduct stock

2

transactions, because you used the telephone to do this, the Code 397 is supported." Pet. Ex. 7. Berkun appealed the most recent decision of the Director on March 31, 2011, contending that the Director never adjudicated certain procedural issues related to the delay of his UDC hearing that Berkun had previously raised. Pet. Ex. 8. After he received no response to his latest appeal, Berkun filed this petition on June 28, 2011.[1]

Broadly construed, the petition alleges that Berkun's constitutional rights to due process were violated when (1) the November 1, 2010 UDC hearing for the offense was not held within three business days of its discovery, as required by BOP regulations; and (2) the BOP on October 25, 2010 made an untimely request for an extension of time to hold the hearing. Pet. at 2.[2] Berkun thus quarrels not with the sanction he received—the temporary loss of his email privileges—but instead the process by which he received the

---

[1] Since Berkun is proceeding pro se, he benefits from the "prison mailbox rule," which provides that a petition for a writ of habeas corpus is deemed filed on the day it is handed to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). Berkun's petition is dated June 28, 2011; the Court will assume that Berkun handed the petition to prison officials to be mailed on that date as well.

A federal prisoner seeking relief under Section 2241 must first exhaust his federal administrative remedies. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). The Government does not argue that Berkun has failed to exhaust his administrative remedies here.

[2] In light of Berkun's pro se status, his submissions "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Additionally, the Court must liberally construe the pleadings "'to raise the strongest arguments that they suggest.'" Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)).

sanction. Pet. at 2 ("Petitioner is entitled to a ruling on his procedural issues . . . ."); Reply Memorandum in Support of Petition for a Writ of Habeas Corpus dated September 29, 2011 ("Pet'r's Reply") ("Respondents have never issued a ruling on the procedural deficiencies in the instant matter.").

Failing to address this point, the Government responds that the petition should be dismissed because Berkun's loss of email privileges for 15 days does not implicate any constitutionally protected liberty interest and that any potential effect of the violation on Berkun's sentence is merely speculative. Government's Opposition to Petition for a Writ of Habeas Corpus dated September 26, 2011 at 4-6.

## DISCUSSION

Habeas corpus review is available for federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). While the ordinary vehicle for a federal prisoner to seek habeas relief is 28 U.S.C. § 2255, under which such a prisoner may have his sentence vacated or set aside, a petition challenging the execution of a prisoner's sentence, such as "'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions,'" is properly brought under Section 2241. Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) (quoting Jiminian v. Nash,

245 F.3d 144, 146 (2d Cir. 2001)); see also Carmona, 243 F.3d at 632 (habeas action seeking to expunge BOP disciplinary sanctions from petitioner's record constitutes challenge to the execution of the petitioner's sentence properly brought pursuant to Section 2241). Accordingly, since Berkun challenges disciplinary actions taken against him at the MDC, the petition is properly before the Court pursuant to Section 2241.

As for the merits of Berkun's due process claim, "[p]rison disciplinary proceedings are not part of a criminal prosecution, [and thus] the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). While prison officials are given substantial deference in the execution of policies, see Jolly v. Coughlin, 76 F.3d 468, 476 (2d Cir. 1996), in order to comport with due process, a disciplinary hearing must provide the inmate: (1) advance written notice of the alleged violation; (2) when consistent with institutional aims, an opportunity to call witnesses and present documentary evidence in defense; (3) a written statement of the factfinder as to the evidence relied upon and reasons for the disciplinary action; (4) an impartial factfinder; and (5) a decision supported by "some evidence." See Superintendent Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); see also Wolff, 418 U.S. at 563-66. In determining whether there is "some evidence" to support the decision, "the relevant

question is whether there is <u>any</u> evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455–56 (emphasis added).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq. The regulations in effect during the relevant period here required BOP staff to prepare an Incident Report when there was reasonable belief that a violation of BOP regulations had been committed by an inmate, and the staff considered informal resolution of the incident inappropriate or unsuccessful.[3] 28 C.F.R. § 541.14(a). The incident would then be referred to the UDC for an initial hearing pursuant to Section 541.15. 28 § 541.14(b)(2). The UDC hearing was to "ordinarily [be] held within three work days from the time the staff became aware of the inmate's involvement in the incident" and did not include the initial day the staff learned of the incident, weekends, or holidays. 28 C.F.R. § 541.15(b). This period could also be extended for good cause shown by either the inmate or staff. 28 C.F.R. § 541.15(k).

At issue here is the application and effect of 28 C.F.R. § 541.15(b). Berkun, relying on this regulation, contends that he was denied due process because his initial UDC hearing "should have been held no later than Thursday October 21, 2010"—three days

---

[3] 28 C.F.R. §§ 541.14-541.15 have been amended by 28 C.F.R. §§ 541.7-541.8 (effective Jun. 20, 2011).

6

after the discovery of the incident—but instead was not held until November 1, 2010. Pet'r's Reply at 2. This argument is meritless for several reasons.

As an initial matter, the inclusion of the word "ordinarily" in the regulation suggests flexibility; it does not prohibit holding the hearing after three days. Without making a "fortress out of the dictionary," Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945), aff'd 326 U.S. 404, 66 S. Ct. 193, 90 L. Ed. 165 (1945) (L. Hand., J.), Berkun's contention that § 541.15 is a statute of limitations is belied by "ordinarily."

In any event, there does not appear to have been any violation of the regulations here. Pursuant to 28 C.F.R. § 541.15(k), the UDC was permitted to extend any time limit referenced in 28 C.F.R. § 541.15 where there was "good cause" to do so. However, "[t]he warden's approval is required for any extension beyond five work days," BOP Program Statement 5270.08, ch. 6, and the Warden granted such permission nunc pro tunc on October 25, 2010 on the ground that there was an administrative delay in processing the Incident Report. Compl. Ex. 2, at 3. The October 25, 2010 letter to the Warden requested an extension of five work days to conduct the UDC hearing, and the hearing was held five work days later, consistent with the regulations. See Rodriguez v. Lindsay, No. 09 Civ. 2915 (CBA), 2011 WL 2601448, at *3 (E.D.N.Y. June 30, 2011) ("'[E]ven if a delay in holding the initial hearing would otherwise support a due process claim, the time

7

for holding the hearing was duly extended.'" (quoting Williams v. Menifee, No. 05 Civ. 4045 (RWS), 2006 WL 2481823, at *5 (S.D.N.Y. Aug. 25, 2006))).

Additionally, Berkun provides no authority, and the Court has found none, that stands for the proposition that BOP failure to meet regulatory deadlines, without more, renders a prison disciplinary proceeding inconsistent with due process. Indeed, all of the authority revealed to the Court counsels the opposite—particularly where, as here, the petitioner suffered no prejudice by the delay. See, e.g., Ortiz v. Holt, 390 F. App'x 150, 152 (3d Cir.2010) (per curiam) (interpreting 28 C.F.R. § 541.15(b) and concluding that "Wolff did not require that a hearing be held within three days (or a specific time frame). . . ."); Rodriguez, 2011 WL 2601448, at *3-4 (18 day delay between filing of incident report and UDC hearing date not a due process violation because petitioner alleged no prejudice as a result of the delay and language in regulations not constitutionally significant); Scott v. Craig, No. 05 Civ. 1359, 2008 WL 4866051, at *4-5 (N.D.N.Y. Nov. 7, 2008) (one year delay in filing of incident report and holding of UDC hearing not a due process violation because regulation's language was not mandatory, delay was provided for in regulation, and petitioner was not prejudiced as a result of the delay); Williams, 2006 WL 2481823, at *4-5 (same); Mayo v. Hogsten, No. 06 Civ. 2241, 2007 WL 1521232, at *5 (M.D. Pa. May 23, 2007) ("The Constitution only requires compliance with

8

minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. Wolff does not set a three-or seven-day limit, or any time limit, for the hearing.").

Berkun was not denied a hearing before the UDC, nor does he even dispute the UDC's findings. He simply contends that "procedural issues" were not followed. Pet. at 2. Nowhere in the petition does he allege that he was prejudiced by the hearing's delay—the true indicator of a due process violation. See, e.g., Williams, 2006 WL 2481823, at *5.

For all of the foregoing reasons, the Court concludes that Berkun's due process challenges to his disciplinary proceedings are fatally flawed and accordingly the petition is hereby DENIED.

SO ORDERED.

Dated: Brooklyn, New York
October 5, 2011

S/ILG

I. Leo Glasser
Senior United States District Judge